**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Nina Y. Wang**

Civil Action No. 25-cv-04098-NYW-KAS

REGGIE KITCHENS,

Plaintiff,

v.

GALLAGHER BASSETT SERVICES, INC.,
KATELYN ABBOTT, and
XL INSURANCE, AMERICA,

Defendants.

---

**ORDER ON MOTION FOR PARTIAL DISMISSAL**

---

This matter is before the Court on Katelyn Abbott's Motion to Dismiss First Amended Complaint for Failure to State a Claim upon Which Relief Can Be Granted ("Abbott Motion"), [Doc. 44]; and Defendant Gallagher Bassett Services, Inc.'s Motion to Dismiss First Amended Complaint for Failure to State a Claim upon Which Relief Can Be Granted ("Gallagher Motion"), [Doc. 45]. Plaintiff has not responded to the Abbott Motion, and the time to do so has elapsed. The Gallagher Motion is fully briefed. [Doc. 49; Doc. 53]. The Court finds that oral argument would not materially assist in the disposition of the Motions. For the following reasons, the Abbott Motion is respectfully **GRANTED**, and the Gallagher Motion is respectfully **GRANTED in part** and **DENIED in part**.

## BACKGROUND

The following facts are drawn from the Amended Complaint. [Doc. 47]. Plaintiff Reggie Kitchens ("Plaintiff" or "Mr. Kitchens") is an HVAC service technician who was injured on the job on October 12, 2021. [*Id.* at ¶ 7]. He is also an insured of Defendant

XL Insurance ("XL")[1] under a workers' compensation insurance policy. [*Id.* at ¶ 8]. Defendant Gallagher Bassett Services, Inc. ("Gallagher") is a third-party adjuster hired to administer workers' compensation claims submitted by XL's insureds, including Plaintiff. [*Id.* at ¶ 9]. As the adjuster, Gallagher investigates claims, evaluates the claimant's injuries, and pays or advances costs to insureds on behalf of XL. [*Id.* at ¶ 12]. Gallagher has "primary control over benefit determinations" for claims it adjusts. [*Id.* at ¶ 13].

Mr. Kitchens's accident left him with "injuries to multiple intervertebral discs in his lumbar spine." [*Id.* at ¶ 23]. At some point after his injury, Mr. Kitchens submitted a workers' compensation claim. [*Id.* at ¶ 11]. Gallagher adjusted his claim, [*id.*], and the individual adjuster was Defendant Katelyn Abbott ("Ms. Abbott"), [*id.* at ¶ 20]. From November 2021 to March 2022, Mr. Kitchens underwent various treatments and imaging on his spine. [*Id.* at ¶ 24]. In November 2022, he entered a "maintenance care program" with a plan to undergo surgery in about two years if the program did not relieve his pain. [*Id.* at ¶ 25]. Mr. Kitchens alleges that, in November 2022, Defendants were aware that he continued to suffer from lumbar spine pain and had enrolled in the maintenance care program with the hope of obtaining pain relief without surgery. [*Id.* at ¶¶ 26–29].

In October 19, 2023, Ms. Abbott filed a Motion to Close Claim for Failure to Prosecute ("Motion to Close") in Mr. Kitchens's workers' compensation case. [*Id.* at ¶ 30]. The Motion to Close asserted that Mr. Kitchens had not seen a health care provider since July 2022 and no further appointments were scheduled. [*Id.* at ¶ 31]. But Defendants had failed to contact him at any point from November 7, 2022 to the filing of the Motion to

[1] XL subsequently filed its own motion to dismiss. [Doc. 58]. The Court will issue a ruling on XL's motion in due course.

Close on October 19, 2023. [*Id.* at ¶ 37]. In Mr. Kitchens's view, the Motion was "baseless" because Defendants knew disc replacement surgery had been recommended in March 2022 and that he was still participating in the maintenance care program. [*Id.* at ¶¶ 32–33].

On November 9, 2023, Margarita Montelongo ("Ms. Montelongo"), another Gallagher claims adjuster, sent an email to Plaintiff stating that a Dr. Gessman had never provided proper documentation and Plaintiff's workers' compensation file was "closed effective October 17, 2023." [*Id.* at ¶ 41].

On November 14, 2023, Mr. Kitchens had a pre-surgery appointment that Defendants were "aware of."[2] [*Id.* at ¶¶ 34–35]. That same day, an official with the Colorado Division of Workers Compensation informed Ms. Montelongo that an inability to obtain records from a physician is not a valid reason for claim closure. [*Id.* at ¶ 14]. But despite this information, and despite Mr. Kitchens's appointment, Defendants continued to "prosecute" the Motion to Close. [*Id.* at ¶¶ 36, 44]. A state administrative judge denied the Motion to Close on December 8, 2023. [*Id.* at ¶ 51].

Plaintiff filed this lawsuit in state court on October 17, 2025. [Doc. 6 at 2]. Defendants removed the case to this court. [Doc. 1]. In his operative Amended Complaint, Mr. Kitchens asserts six claims: (1) a breach of contract claim against XL ("Count One"); (2) a claim for unreasonable delay and denial of benefits against Gallagher and XL, pursuant to Colo. Rev. Stat. §§ 10-3-1115 and -1116 ("Count Two"); (3) a claim for unfair claims settlement practices against Gallagher and XL, pursuant to Colo. Rev.

---

[2] It is unclear whether Mr. Kitchens alleges actual knowledge or constructive knowledge, based on Gallagher and Ms. Abbott's ability to obtain records regarding his appointment pursuant to a medical records release. [Doc. 1 at ¶¶ 35, 40].

Stat. § 10-3-1104(1)(h), which the Court construes to also include a claim for common law bad faith breach of insurance contract ("Count Three"); (4) a vicarious liability claim against XL, seeking to hold it liable for Gallagher's conduct ("Count Four"); (5) a negligence claim against Gallagher ("Count Five"); and (6) a negligence claim against Ms. Abbott ("Count Six"). *See* [Doc. 1 at ¶¶ 59–112].

Ms. Abbott and Gallagher now move to dismiss the claims against them for failure to state a claim. [Doc. 44; Doc. 45].

**LEGAL STANDARD**

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). A plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). The Court must ultimately "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## ANALYSIS

### I. Abbott's Motion

Ms. Abbott moves to dismiss Count Six, the single negligence claim against her. [Doc. 44 at 4]. Although Mr. Kitchens has failed to response, the Court "may not grant a motion to dismiss for failure to state a claim merely because a party failed to file a response." *Issa v. Comp USA*, 354 F.3d 1174, 1177 (10th Cir. 2003) (cleaned up). "[T]he district court must still examine the allegations in the plaintiff's complaint and determine whether the plaintiff has stated a claim upon which relief can be granted." *Id.* at 1178.

Ms. Abbott argues that she owed no legal duty to Mr. Kitchens that could support a negligence claim against her. [Doc. 44 at 4–7]. Mr. Kitchens has already dismissed his statutory and common law bad faith claims against her, Ms. Abbott argues, and he cannot "masquerade[e]" these claims as simple negligence. [*Id.* at 6]; *see also* [Doc. 28 at 2 (Plaintiff stating, in a prior motion to amend, that he "will be dismissing all insurance-based claims" against Ms. Abbott)]. The Court respectfully agrees, though the problem goes deeper than merely whether Ms. Abbott owed a duty.

In the insurance context, the duty owed by insurers is a contractual duty of good faith and fair dealing. *Cary v. United of Omaha Life Ins. Co.*, 68 P.3d 462, 466 (Colo. 2003). "Because of the special nature of the insurance contract and the relationship which exists between the insurer and the insured, an insurer's breach of this duty gives rise to a separate cause of action sounding in tort." *Id.* (quotation omitted). That "cause of action" is a distinct tort claim for "bad faith breach of insurance contract." *Goodson v. Am. Standard Ins. Co. of Wis.*, 89 P.3d 409, 414 (Colo. 2004). And for first-party claimants like Mr. Kitchens, the "standard of conduct" for this claim is "different"—i.e., heightened—

as compared to simple negligence. *Id.* at 415. Thus, at least in the first-party context, "a claim for simple negligence against an insurer or its agent is not recognized in Colorado." *Jordan v. City of Aurora*, 876 P.2d 38, 43 (Colo. App. 1993) (noting that this also applies in the workers' compensation context); *see also Alexander v. USAA Cas. Ins. Co.*, No. 21-cv-02543-NYW-MDB, 2022 WL 4970052, at *3 & n.6 (D. Colo. Oct. 4, 2022) (finding "no Colorado authority permitting a negligence claim against an insurance company" and observing that "common-law bad-faith claims take the place of negligence claims").

Accordingly, Mr. Kitchens's negligence claim against Ms. Abbott "must be dismissed as a matter of law." *Jordan*, 876 P.2d at 43. The Abbott Motion is respectfully **GRANTED**, and Count Six is **DISMISSED with prejudice**. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir.2006) (recognizing that dismissal with prejudice under Rule 12(b)(6) is appropriate where further amendment would be futile).

## II. Gallagher's Motion

Gallagher seeks dismissal of all three claims against it. [Doc. 45 at 4]. The Court addresses each in turn.

### A. Count Two: Unreasonable Delay and Denial of Benefits

Mr. Kitchens's first claim against Gallagher is for "unreasonable delay and denial of benefits" in violation of Colo. Rev. Stat. §§ 10-3-115 and -1116. [Doc. 47 at 13]. This statute instructs that insurers "shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant." Colo. Rev. Stat. § 10-3-1115(1)(a). To succeed on a claim under this statute, an insured must establish that (1) the insurer delayed or denied payment of benefits to the insured, and (2) the delay or

denial was without a reasonable basis. *See Am. Fam. Mut. Ins. Co. v. Barriga*, 418 P.3d 1181, 1185–86 (Colo. 2018).

Gallagher's Motion raises a mixed bag of arguments against this claim. [Doc. 45 at 5–6]. Gallagher broadly argues that Mr. Kitchens fails to allege that its conduct was unreasonable. [*Id.*]. This includes an argument that Mr. Kitchens does not sufficiently specify which "benefits were owed" or how Gallagher's conduct was "substandard." [*Id.* at 5–6]. According to Gallagher, Mr. Kitchens "does not plead he had been receiving treatment nor does he alleged any workers' compensation benefit was denied or delayed during the pendency of the motion." [Doc. 53 at 5].

Mr. Kitchens supplies several reasons why Gallagher's conduct may have been unreasonable. *See* [Doc. 49 at 7–9]. But he does not address which payments of benefits were delayed or denied. *See* [*id.*]. This proves fatal to Count Two.

Section 10-3-1115 only prohibits unreasonable delay or denial of "*payment* of a claim for *benefits owed*." § 10-3-1115(1)(a) (emphasis added). To state a claim under these provisions, "a plaintiff must [allege] that 'the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action.'" *Giertz v. State Farm Mut. Auto. Ins. Co.*, No. 22-1114, 2023 WL 3728197, at *3 n.10 (10th Cir. May 26, 2023) (quoting Colo. Rev. Stat. § 10-3-1115(2)).

Mr. Kitchens does not allege what payments of benefits were denied or delayed. The Amended Complaint offers only the conclusory allegations that Gallagher delayed and denied "providing to Plaintiff the benefits of his Workers Compensation insurance." [Doc. 47 at ¶¶ 69, 75]; *see also* [*id.* at 22 (seeking recovery "[f]or all damages provided by C.R.S. 10-3-1115 and 1116," without referencing benefits)]. In his response brief, Mr.

Kitchens suggests that "Gallagher delayed and denied benefits by failing to reasonably investigate and by frivolously and vexatiously seeking a groundless claim closure despite ongoing entitlement to benefits." [Doc. 49 at 7]. But this does not clarify which payments of benefits owed were actually affected by Gallagher's conduct. A state administrative law judge denied the Motion to Close less than two months after it was filed. [Doc. 47 at ¶¶ 30, 51]. There is no allegation that Mr. Kitchens even lost coverage during the pendency of the Motion to Close, let alone that any payments were disrupted.[3] Mr. Kitchens thus fails to adequately allege that Gallagher unreasonably delayed or denied payment of any benefit.

Because Mr. Kitchens fails to state a claim for unreasonable delay or denial against Gallagher, this Court need not reach Gallagher's additional argument as to whether a statutory bad faith claim can lie against it because it is not an "insurer." [Doc. 45 at 5–6]. The Gallagher Motion is respectfully **GRANTED** as to Count Two. Count Two is **DISMISSED without prejudice**.

### B. Count Three: Unfair Settlement Practices and Common Law Bad Faith

Count Three is labeled as a claim for "Unfair Claims Settlement Practices / Violation of C.R.S. Section 10-3-1104(1)(h)." [Doc. 47 at 15]. Gallagher argues that Colo. Rev. Stat. § 10-3-1104(1)(h) does not establish a private right of action. [Doc. 45 at 6]. Gallagher further argues that this claim should not be construed to include a common law

---

[3] To the extent Mr. Kitchens seeks recovery of compensatory damages other than benefits owed, that is the province of a common law bad faith claim. *See Goodson*, 89 P.3d at 415 (recognizing that compensatory damages and other recovery under "traditional tort principles" are available on a common law bad faith claim).

bad faith claim and that such a claim is not plausibly alleged anyway. [*Id.* at 7–8]. The Court addresses these issues in order.

### 1. Private Right of Action

To the extent Mr. Kitchens asserts that § 10-3-1104(1)(h) creates its own private right of action, this claim fails. Section 10-3-1104(1) does nothing more than "defin[e]" certain practices as "as unfair methods of competition and unfair or deceptive acts or practices in the business of insurance." The Colorado Court of Appeals has explained that this is one of several provisions that "provide[] for state regulation of insurance companies and do[] not create a private cause of action." *Schnacker v. State Farm Mut. Auto. Ins. Co.*, 843 P.2d 102, 104 (Colo. App. 1992); *cf. Parsons ex rel. Parsons v. Allstate Ins. Co.*, 165 P.3d 809, 817 (Colo. App. 2006) ("The unfair practices listed in § 10–3–1104(1)(h) do not establish a standard of care actionable in tort, but they may be used as evidence of industry standards."). Accordingly, § 1103(1)(h) "cannot be used as a basis for [a] claim." *Schnacker*, 843 P.2d at 104.

Rather than address *Schnacker*'s reasoning, Mr. Kitchens seeks to distinguish its facts. [Doc. 49 at 9–10]. He points to other portions of *Schnacker* that dealt with common law rules regarding an insurer's liability to a third-party claimant and emphasizes that he is a first-party insured. [*Id.*]. This is not responsive to whether § 10-3-1104(1)(h) creates a private right of action. Even if he could distinguish *Schnacker* on this basis, Mr. Kitchens would still need to demonstrate a "a clear legislative intent to create such a cause of action" through § 10-3-1104(1)(h). *Gerrity Oil & Gas Corp. v. Magness*, 946 P.2d 913,

923 (Colo. 1997). He does not attempt to do so,[4] and the Court need not make his arguments for him. *See United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015).

**2. Count Three Includes a Common Law Bad Faith Claim**

In construing Count Three, the Court is mindful that Rule 8(a)(2) entitles a defendant to "fair notice of what the claim is and the grounds upon which it stands." *Twombly*, 550 U.S. at 555 (quotation omitted); Fed. R. Civ. 8(a)(2). "Rule 8 serves the important purpose of requiring plaintiffs to state their claims intelligibly so as to inform the defendants of the legal claims being asserted." *Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir. 2007). Yet Rule 8(e) also instructs that "[p]leadings must be construed so as to do justice." Fed. R. Civ. P. 8(e). "To determine the nature of a claim, courts examine the substance of a plaintiff's allegations, not merely the labels applied to them." *Johnson v. Dep't of Veterans Affs.*, 351 F. App'x 288, 290 (10th Cir. 2009) (citing *Weaver v. United States*, 98 F.3d 518, 520 (10th Cir.1996)); *see also Young v. Colo. Dep't of Corr.*, 174 F.4th 1283, 1285–86 (10th Cir. 2026) ("assum[ing] for the sake of argument," given conflicting Tenth Circuit authorities, that attorney-drafted complaints may receive the liberal construction afforded to pro se litigants).

The substance of Mr. Kitchens's Count Three affords Gallagher fair notice of a common law bad faith claim. True, the Amended Complaint labels and generally presents Count Three as a claim under § 10-3-1104(h)(1). *See* [Doc. 47 at ¶¶ 83–98]. But the claim also repeatedly references Gallagher and XL's "duty of good faith and fair dealing"

---

[4] Mr. Kitchens also claims, without any explanation or authority, that "[c]ommon law bad faith is codified under C.R.S. § 10-3-1104." [Doc. 49 at 10]. As explained, the Court respectfully disagrees that this provision creates a private right of action, whether by codifying a common law cause of action or by fashioning one out of whole cloth.

and alleged breach of that duty. [*Id.* at ¶¶ 86–89, 98]; *see also* [*id.* at ¶¶ 56–57]. This language parrots Colorado case law recognizing that this duty exists and may give rise to a common law bad faith claim. *See, e.g.*, *Cary*, 68 P.3d at 466 ("Every insurer owes its insured a non-delegable duty of good faith and fair dealing. . . . [A]n insurer's breach of this duty gives rise to a separate cause of action sounding in tort."). Insurance-industry defendants like Gallagher and XL can fairly understand from these allegations that Mr. Kitchens seeks to assert a common law bad faith claim, which is typical in this kind of case. Accordingly, the Court respectfully concludes that Count Three contains a common law bad faith claim.

### 3. Plaintiff Plausibly Alleges a Common Law Bad Faith Claim.

Recognizing that Count Three may raise a common law bad faith claim, Gallagher argues that Plaintiff fails to plausibly allege such a claim. [Doc. 45 at 5–8; Doc. 53 at 3–5]. The Court respectfully disagrees.

"The requirements of a common law bad faith claim under Colorado law are heightened in comparison to those of a statutory bad faith claim." *Butman Fam. Inv. Ltd. P'ship v. Owners Ins. Co.*, No. 19-cv-01638-KLM, 2020 WL 1470801, at *8 (D. Colo. Mar. 25, 2020) (citing *Fisher v. State Farm Mut. Auto. Ins. Co.*, 419 P.3d 985, 990 (Colo. App. 2015)). In addition to demonstrating that the insurer delayed or denied benefits without a reasonable basis, "a common law insurance bad faith claim requires the insured to sufficiently allege . . . that the insurer knowingly or recklessly disregarded the validity of the insured's claim." *Id.*

"At the motion to dismiss stage . . . it is not for the Court to decide whether [the defendant's] conduct was reasonable as a matter of law or constituted bad faith."

*Hometown Cmty. Ass'n, Inc. v. Phila. Indem. Ins. Co.*, No. 17-cv-00777-RBJ, 2017 WL 6335656, at *8 (D. Colo. Dec. 12, 2017). The Court need only determine whether Plaintiff's factual allegations "are sufficient to plausibly state a claim for bad faith." *Jenkins v. USAA Cas. Ins. Co.*, No. 22-cv-01392-MDB, 2023 WL 2648009, at *4 (D. Colo. Mar. 27, 2023). "In other words, the Court has a responsibility to ensure that the facts as pleaded are sufficient to state more than a simple value dispute." *Id.*

Plaintiff has plausibly alleged a claim for common law bad faith. According to Plaintiff, Gallagher attempted to close his claim despite its actual or constructive knowledge that he was continuing to receive treatments for the injury underlying his claim. [*Id.* at ¶¶ 32, 35–40]. Gallagher apparently also asserted a lack of records from a medical provider as a basis for closure but forged ahead with the Motion to Close even after the Colorado Division of Workers Compensation advised Gallagher that this was not a valid reason to close Mr. Kitchens's claim. [*Id.* at ¶¶ 41–46]. Construing these allegations in the light most favorable to Plaintiff, the Court finds that Mr. Kitchens adequately alleges that Gallagher acted unreasonably and with knowing or reckless disregard for the validity of his claim. *See Goodson*, 89 P.3d at 409. Whether Gallagher actually acted unreasonably and with the requisite mental state is a factual issue that the Court cannot resolve at this stage. *See Dale v. State Farm Mut. Auto. Ins. Co.*, 699 F. Supp. 3d 1219, 1225 (D. Colo. 2023) ("[W]hether an insurer's conduct was reasonable under the circumstances is ordinarily a question of fact for the jury.").

Gallagher maintains that its conduct cannot be unreasonable because Colorado regulations permitted it to file a Motion to Close. [Doc. 45 at 6–8]. The relevant regulation provides that "[w]hen no activity in furtherance of prosecution has occurred in a claim for

a period of at least 6 months, a party may request the claim be closed." 7 Colo. Code Regs. § 1103-3, r. 7-1(C) (2023) ("Rule 7-1(C)"). Gallagher contends that Rule 7-1(C) justifies the Motion to Close because the motion followed "a year of Plaintiff not seeking medical treatment." [Doc. 53 at 4]. But Plaintiff alleges that, from November 2022 onward, he was participating in a maintenance care program to treat his back pain and continued to attend physician appointments as part of that program. [Doc. 47 at ¶¶ 25, 27, 29]. He also had a pre-surgery appointment scheduled for November 14, 2023. [*Id.* at ¶ 45]. Despite its actual or constructive knowledge of these ongoing treatments, Gallagher filed and proceeded with the Motion to Close. [*Id.* at ¶¶ 32, 35–40]; *see also* [Doc. 49 at 8–9 (Plaintiff highlighting these allegations)]. Taken as true, these allegations plausibly establish that Gallagher's conduct was unreasonable notwithstanding Rule 7-1(C) and that Gallagher acted knowingly or recklessly.

**4. Gallagher Owed Plaintiff a Duty of Good Faith**

Gallagher further asserts that, as a third-party adjuster, it owed no duty of good faith that could sustain a common law bad faith claim. [Doc. 45 at 8–10; Doc. 53 at 1–3]. The Parties' dispute centers on whether Colorado law requires Gallagher to bear some of the financial risk of insurance claims before it can owe a duty of good faith to insureds. *See* [Doc. 49 at 3–4; Doc. 53 at 1–3]. The Court finds that no such requirement applies here.

In *Scott Wetzel Services, Inc. v. Johnson*, the Colorado Supreme Court held that "an independent claims adjusting company . . . acting on behalf of a self-insured employer owes a duty of good faith and fair dealing to an injured employee in investigating and processing a workers' compensation claim even in the absence of contractual privity with

the employee." 821 P.2d 804, 813 (Colo. 1991). While XL is not a self-insured employer, [Doc. 47 at ¶¶ 8–9], the Colorado Supreme Court later explained that *Wetzel* turned on the structure of the Workers' Compensation Act and "the fact that the adjuster 'effectively delivered the workers' compensation benefits and took many of the steps necessary to perform the employer's duty of good faith and fair dealing owed to the claimants.'" *Cary*, 68 P.3d at 467 (quoting *Wetzel*, 68 P.2d at 812). *Cary* went on to hold that, in general, a third-party administrator owes a duty of good faith when it "performs many of the tasks of an insurance company _*and*_ bears some of the financial risk of loss for the claim." 68 P.2d at 469 (emphasis added).

The Colorado Court of Appeals confronted the boundary between *Wetzel* and *Cary* in *Riccatone v. Colorado Choice Health Plans*, 315 P.3d 203 (Colo. App. 2013). The plaintiffs had asserted a common law bad faith claim against third-party administrators of their employers' self-funded health care plan. *Id.* at 205. Invoking *Cary*, the administrators sought summary judgment against this claim on the argument that they bore no financial risk under the plan and thus owed no duty to the insureds. *Id.* at 206–07. The plaintiffs countered with *Wetzel*, arguing that the "lack of a financial incentive is not dispositive of [the] duty inquiry." *Id.* at 207. The Colorado Court of Appeals disagreed. It explained that "the *Wetzel* court explicitly based its holding on the duty arising from the statutory and regulatory structure of the Workers' Compensation Act, not from a duty arising from contract." *Id.* at 207. *Wetzel* was therefore "inapposite," and *Cary*'s "risk of loss" requirement applied. *Id.* The *Riccatone* court noted, however, that the *Wetzel* administrator may well have had the requisite financial incentives to satisfy *Cary*, because

it "paid medical bills with checks written on its own account." *Id.* (citing *Wetzel*, 821 P.2d at 812).

The Court finds *Riccatone* persuasive and controlling. Even if *Cary*'s financial risk requirement applies, Plaintiff alleges that Gallagher's duties included "paying or *advancing*" costs on behalf of XL. [Doc. 47 at ¶ 12 (emphasis added)]. *Riccatone* suggests that this could satisfy *Cary*'s standard for triggering a third-party adjuster's duty of good faith. In any event, Gallagher's argument that *Wetzel* is "no longer the standard" falls flat. [Doc. 53 at 2]. *Cary* and *Riccatone* may limit *Wetzel* to the workers' compensation context, but neither case suggests that *Wetzel* is no longer good law. *See Cary*, 68 P.3d at 467; *Riccatone*, 315 P.3d at 207.

Accordingly, *Wetzel* supplies the test for ascertaining Gallagher's duty to Mr. Kitchens. Gallagher thus owed a duty of good faith to Mr. Kitchens when it "investigat[ed] and process[ed] [his] workers' compensation claim." *Wetzel*, 821 P.2d at 813. Like the adjuster in *Wetzel*, Mr. Kitchens alleges that Gallagher performed extensive claim investigation and processing duties and "had primary control over benefit determinations." [Doc. 47 at ¶¶ 12–13]. Gallagher only challenges the financial risk requirement and does not dispute that, as alleged, it "effectively delivered the workers' compensation benefits" under its arrangement with XL. *Wetzel*, 821 P.2d at 812; *see* [Doc. 45 at 8–10; Doc. 53 at 1–3].

In sum, the Gallagher Motion is respectfully **GRANTED** as to Count Three's claim under § 10-3-1104(1)(h) and **DENIED** as to Count Three's common law bad faith claim. Count Three is **DISMISSED with prejudice** to the extent it attempts to bring a claim under § 10-3-1104(1)(h). *See Brereton*, 434 F.3d at 1219.

### C. Count Five: Negligence

Finally, Gallagher contends that Plaintiff's negligence claim against it fails for lack of a legal duty. [Doc. 45 at 9–10]. These arguments reiterate the issues raised in the Abbott Motion. *See* [*id.*; Doc. 44 at 4–7]. For the same reasons set forth regarding the Abbott Motion, the Court respectfully agrees that Plaintiff's negligence claim against Gallagher "must be dismissed as a matter of law." *Jordan*, 876 P.2d at 43. The Gallagher Motion is **GRANTED** as to Count Five, which is **DISMISSED with prejudice**.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that:

(1) Katelyn Abbott's Motion to Dismiss First Amended Complaint for Failure to State a Claim upon Which Relief Can Be Granted [Doc. 44] is **GRANTED**;

(2) Defendant Gallagher Bassett Services, Inc.'s Motion to Dismiss First Amended Complaint for Failure to State a Claim upon Which Relief Can Be Granted [Doc. 45] is **GRANTED in part** and **DENIED in part** as set forth herein;

(3) Plaintiff's sole remaining claim against Gallagher is Count Three's claim for common law bad faith; and

(4) Gallagher's prior motion to dismiss [Doc. 11] is **DENIED as moot**.[5]

---

[5] Gallagher's prior motion sought dismissal of Plaintiff's original complaint. *See* [Doc. 11]. "The filing of an amended complaint moots a motion to dismiss directed at the complaint that is supplanted and superseded." *Strich v. United States*, No. 09-cv-01913-REB-KLM, 2010 WL 14826, at *1 (D. Colo. Jan. 11, 2010).

DATED: September 30, 2026

BY THE COURT:

____________________________
Nina Y. Wang
United States District Judge